UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **OHIO COUNCIL 8 American Federation of State, County and Municipal Employees, AFL-CIO, et al.** | : : : : | Case No. 1:10-CV-504 |
| | | Chief Judge Susan J. Dlott |
| Plaintiffs, | : : | **PLAINTIFFS' CROSS- MOTION FOR SUMMARY JUDGMENT (Doc. 58)** |
| vs. | : : | |
| **JENNIFER BRUNNER, et al.** | : : | |
| Defendants. | : | |

**I.     INTRODUCTION**

Defendants Supreme Court of Ohio, Ohio Disciplinary Counsel, and Board of Commissioners on Grievances and Discipline all moved for summary judgment on Plaintiff's constitutional challenge to the Ohio Code of Judicial Conduct Rule 4.4 (A) arguing that one-on-one solicitation ban serves compelling state interests and is narrowly tailored to meet those interests.  (Doc. 58).  Plaintiffs opposed the motion (Doc. 65) and now submit their cross-motion for summary judgment on the code of conduct claim.

**II.     FACTS**

On July 28, 2010 Plaintiffs filed a Complaint (Doc. 1) and a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2).  Plaintiffs challenged two provisions of the Ohio Code of Judicial Conduct: 1) Rule 4.2 (B)(4) which prohibited a judicial candidate from identifying himself or herself as a member of, or affiliated with, a political party after the primary election; 2) Rule 4.4 (A) which prohibited a judicial candidate from personally soliciting or receiving campaign contributions.

1

A hearing was set for August 13 on the motion. On the evening of August 11, 2010 Defendant Ohio Supreme Court filed a notice that it had amended the Ohio Code of Judicial Conduct. (Doc. 22). The Amendment repealed the challenged prohibition in Rule 4.2 (B)(4). The Court found Defendants actions mooted Plaintiffs' challenge. (Order Doc. 49 fn 2). The Ohio Supreme Court also amended Rule 4.4(A) but the amendment did not moot Plaintiffs claims.

### A. Rule 4.4 Ban on Personal Solicitations of Campaign Contributions.

Ohio Code of Judicial Conduct, Rule 4.4 (A) which stated: "A judicial candidate shall not personally solicit or receive campaign contributions." On the evening of August 11, 2010 Defendants also amended this code section as follows:

> (A) A *judicial candidate* shall not personally solicit ~~or~~ campaign *contributions*, except as expressly authorized in this division, and shall not personally receive campaign *contributions*. A *judicial candidate* may establish a campaign committee to manage and conduct a campaign for the candidate, subject to the provisions of this Code. The *judicial candidate* is responsible for ensuring that his or her campaign committee complies with applicable provisions of this Code and other applicable *law*. A *judicial candidate* may solicit campaign contributions in the following manner:
> (1) A judicial candidate may make a general request for campaign *contributions* when speaking to an audience of twenty or more individuals;
>
> (2) A *judicial candidate* may sign letters soliciting campaign *contributions* if the letters are for distribution by the *judicial candidate's* campaign committee and the letters direct *contributions* to be sent to the campaign committee and not to the *judicial candidate*.

(Doc. 22-1, Amended Rule 4.4 (A)). The evidence at the preliminary injunction hearing revealed that this Rule, even after it was amended, restricted Plaintiff candidates Nadine Allen, Peter Corrigan, and Martha Good from personally soliciting family and friends who have nothing to do with the court,[1] from sending thank you notes to donors who contributed to their campaigns,[2]

---

[1] Good TR. 195; Allen TR. 48.
[2] Allen TR. 49; Corrigan TR. 86.

from accepting unsolicited campaign contributions,[3] from advising unsolicited potential donors how to contribute,[4] from passing out campaign literature that included the campaign website since the website solicits contributions,[5] and from handing a donor a contribution envelope.[6]

The evidence also showed that the solicitation restriction was vague and not understood by judicial candidates. For example, one Judge testified he does not know if the solicitation Rule prohibits him from shaking festival goers hand and asking him for his support. Such a statement could mean asking for financial support or a vote.[7]

The evidence shows there is confusion over whether a candidate handing a person a campaign contribution envelope is a violation.[8] The Defendants submitted an affidavit of Richard Dove, Assistant Administrative Director for the Supreme Court, stating that in answering questions during some judicial candidate seminars he has said that a candidate may hand an unsolicited donor an envelope addressed to the judge's campaign committee. Def. Ex. 1 ¶ 10. Clearly such a statement made by Mr. Dove[9] who "sometimes receives questions" on this topic cannot amend the Code of Judicial Conduct. As Judge Allen testified, "it's not written in the code" and there are no cases from the Ohio Supreme Court interpreting the ban to allow handing out contribution envelopes. Nor did she ever hear it discussed at any judicial seminar she attended.[10]

Additionally, interpretations of the code discussed in the judicial seminars change over time. For example, in the past a candidate could send a thank a note to a donor thanking him for his

---

[3] Allen TR. 48.
[4] Corrigan TR. 86.
[5] Corrigan TR. 85.
[6] Allen TR. 38-39; Good TR. 196.
[7] Corrigan TR. 82.
[8] Allen TR. 38-39; Good TR. 196.
[9] Mr. Dove no longer is the Assistant Administrative Director for the Supreme Court.
[10] Allen TR. 39, 49.

future support.[11] However, in recent years Judge Allen testified she has been told that such a thank you note is an indirect soliciting and she is not allowed to thank a donor for his continued support.[12] Because of the prohibition on how to word thank you notes Judge Corrigan has his committee send the thank you note thanking the donor for their continued support, which donors find insulting.[13] Mr. Dove's affidavit does not shed much light on this, since he said a candidate may send personal thank you notes to contributors, but he did not address whether the note can say thank you for your continued support. Def. Ex. 1 ¶ 9. Some candidates also believe the Code prohibits a candidate from handing out flyers or invitations to fundraising events,[14] from passing out literature that directs someone to the campaign website since the website has a donation mechanism,[15] and from even telling a potential donor how to donate.[16] All of this evidence shows the breadth of the restrictions Rule 4.4(A) imposes.

### B. The Defendants' Interests Are Served Elsewhere in the Code of Judicial Conduct.

The evidence shows that the Ohio Supreme Court articulated four interests that are served by the personal solicitation ban, when it amended Rule 4.4 on the eve of trial:

> (1) avoiding the appearance of coercion or *quid pro quo*, especially when a judicial candidate engages in a one-on-one solicitation of a lawyer or party who appears before the court; (2) preserving both the appearance and reality of an impartial, independent, and non-corrupt judiciary; (3) ensuring the public's right to due process and fairness; and (4) furthering the public trust and confidence in the impartiality of the judicial decision-maker. Doc. 22-1, comment 1 to Rule 4.4.

The evidence also shows that the Ohio Supreme Court meets these four interests in a myriad of ways unrelated to the personal solicitation ban:

---

[11] Allen TR. 49.
[12] *Id.*
[13] Corrigan TR. 86.
[14] Good TR. 197-198, 212; Corrigan TR. 85-86.
[15] Corrigan TR. 85.
[16] Corrigan TR. 86.

4

- A judge shall uphold and promote the *independence, integrity, and impartiality* of the judiciary, and shall avoid *impropriety* and the appearance of *impropriety*. Canon 1.

- A judge shall act at all times in a manner that promotes public confidence in the *independence, integrity, and impartiality* of the judiciary, and shall avoid *impropriety* and the appearance of *impropriety*. Rule 1.2

- A judge shall not abuse the prestige of judicial office to advance the personal or *economic interests* of the judge or others, or allow others to do so. Rule 1.3

- A judge shall perform the duties of judicial office *impartially*, competently, and diligently. Cannon 2.

- A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment. Rule 2.4 (B).

- A judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge. Rule 2.4 (C).

- A judge shall not initiate, receive, permit, or consider *ex parte*[17] communications except in limited circumstances. Rule 2.9.

- A judge shall not make any public statement that might reasonably be expected to affect the outcome or impair the fairness of a matter *pending* or *impending* in any court, or make any nonpublic statement that might substantially interfere with a fair trial or hearing. Rule 2.10

- A judge shall disqualify himself or herself in any proceeding in which the judge's *impartiality* might reasonably be questioned. Rule 2.11.

---

[17] "*Ex parte* communication" means a communication, concerning a *pending* or *impending matter*, between counsel or an unrepresented party and the court when opposing counsel or an unrepresented party is not present or any other communication made to the judge outside the presence of the parties or their lawyers. Code of Judicial Conduct Terminology p. 7-8.

5

- A judge may not participate in activities that would appear to a reasonable person to undermine the judge's *independence*, *integrity*, or *impartiality* or engage in conduct that would appear to a reasonable person to be coercive.  Rule 3.1 (B) and (C).

- A judge may accept things of value from friends, relatives or other persons, including lawyers, whose appearance or interest in a proceeding *pending* or *impending* before the judge would in any event require disqualification of the judge.  Rule 3.13 (A) (2).[18]

- A judge may accept anything of value if the donor is neither

    (a) A party or other person who has come or is likely to come or whose interests have come or are likely to come before the judge;

    (b) A person who is doing or seeking to do business with the court. Rule 3.13 (A) (12).

- Judicial candidates shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary.  Cannon 4.

- Judicial candidates must act at all times in a manner consistent with the independence, integrity, and impartiality of the judiciary.  Rule 4.2 (A) (1).

- In connection with cases or issues likely to come before the court, judicial candidates may not make a statement or pledge, promise or commitment that would be inconsistent with the impartial performance of the adjudicative duties of judicial office.  Rule 4.1 (6).

- Judicial candidates for common pleas, municipal and county court are prohibited from accepting donations (except from immediate family[19]) in excess of $575.[20] (Rule 4.4 (J) (1); Corrigan TR. 88.

---

[18] The comments to Rule 3.13 make it clear that "[w]henever a judge accepts a gift or other thing of value without paying fair market value, there is a risk that the benefit might be viewed as intended to influence the judge's decision in a case. Rule 3.13 prohibits the acceptance of such benefits, except in circumstances where the risk of improper influence is low and subject to applicable financial disclosure requirements. See Rule 3.15 and R.C. 102.02.  Rule 3.13 Comment #1.

6

- All contributions must be reported on campaign finance reports that made public.[21]

### 3. Enforcement of Violations of the Ohio Code of Judicial Conduct

The Ohio Supreme Court adopted the Ohio Code of Judicial Conduct. If a judicial candidate violates the Code of Judicial Conduct, he or she is subject to discipline by Defendants. If a judge or judicial candidate is suspected of violating the Judicial Code, Defendant Disciplinary Counsel has the authority to investigate, file a complaint, and prosecute a complaint. Supreme Court Rules for the Government of the Judiciary of Ohio ("Gov. Jud. Rule") Rule II § 2(A).

During a judicial campaign, Defendant Jonathan Marshall,[22] Secretary of the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio ("Board"), is responsible for initially reviewing complaints of judicial misconduct for validity. He is also responsible for appointing the probable cause panel and prepares the formal complaint. Ohio Gov. Jud. Rule II § 5 (A)(1) and (B). He acts, in essence, as a prosecutor. In his absence, the Chair or Vice-Chair of the Board review judicial misconduct complaints for validity. *Id*.

Findings of misconduct and enforcement are in the hands of Defendant Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio. Gov. Jud. Rule II § 5. The members of this Board are appointed by the Ohio Supreme Court. Supreme Court Rules for the Government of the Bar of Ohio ("Gov. Bar. Rule") Rule V § 1 and Gov. Jud. Rule II § 1. Under certain circumstances, the Board may refer the judicial grievance to the Disciplinary Counsel. Gov. Jud. Rule II § 5 (A) (3). Ultimately the Supreme Court is the final arbiter of any sanction. *Id*. Rule II § 5(E). If the grievance is against a Justice of the Supreme Court or a

---

[19] Immediate family includes parent, child, brother or sister, grandparent, grandchild, uncle, aunt, nephew, niece, great-grandparent and first cousin. Rule 4.6 (C).
[20] Immediate family and candidates may contribute an unlimited amount of money. The limit for Supreme Court candidates is $3,450 and for court of appeals is $1,150. Rule 4.4 (J) (1).
[21] Corrigan TR. 88.
[22] In June 2010 Mr. Marshall retired and Mr. Richard Dove became the Secretary, however the parties have not substituted the parties.

candidate for Justice, a different procedure is used where the final arbiter is a panel of thirteen appellate judges. *Id*. Rule II § 6.

If a violation is found, a judicial candidate is to be sanctioned commensurate with the seriousness of the violation. The sanction should be sufficient to punish the violator and serve as a deterrent to similar violations by judicial candidates in future elections. *In re Judicial Campaign Complaint Against Brigner* (2000), 89 Ohio St.3d 1460, 1461, citing *In re Judicial Campaign Complaint Against Morris* (1997), 81 Ohio Misc.2d 64, 65. A judicial candidate faces sanctions of fines, suspension, removal from office, and even disbarment for violation of the Code. Gov. Jud. Rule II, § 5 (D)(1)(a)-(e) and Gov. Bar R. V § 6. *See*, *In re Judicial Campaign Complaint against Carr* (1995), 74 Ohio Misc.2d 81; aff'd (1996), 76 Ohio St.3d 320 (judicial candidate fined $500 for soliciting funds by including handwritten notes in envelopes with solicitation letters saying "we need your help now!").

### III. STANDARD OF REVIEW

Plaintiffs agree with Defendants standard of review (Motion p. 4). There are no material facts in dispute and thus summary judgment is proper.

### IV. ARGUMENT

In many respects this claim is simply an effort to apply the ruling addressing the Kentucky Code of Judicial Conduct in *Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir 2010) to similar restrictions in Ohio. In Kentucky the judicial candidate was banned from soliciting campaign funds but may establish committees. *Id*. at 195. In *Carey*, the Court acknowledged a legitimate state interest behind the solicitation clause in that it was consistent with the goal of securing an impartial judiciary. But this restriction must be assessed in light of the state's decision to select judges through elections because as the Court stated, "Judicial elections, like most elections,

require money – often a lot of it." *Id.* at 204. The Court cited to Kentucky's 2006 Supreme Court election of four contested races and one uncontested race, where ten candidates raised over $2.1 million. The impact on the First Amendment was obvious:

> Prohibiting candidates from asking for money suppresses speech in the most conspicuous of ways and, in the process, favors some candidates over others (incumbent judges who benefit from their current status) over non-judicial candidates, the well-to-do (who may not need to raise any money at all) over lower-income candidates, and the well-connected (who have an army of potential fundraisers) over outsiders.

*Id.* The resulting Kentucky rule failed to be narrowly drawn to the state's interest:

> That leaves a rule preventing a candidate from sending a signed mass mailing to every voter in the district but permitting the candidate's best friend to ask for a donation directly from an attorney who frequently practices before the court. Are not the risks of coercion and undue appearance far less with the first (prohibited) solicitation than the second (permitted) one?

*Id.* at 205. The Kentucky solicitation clause was therefore enjoined as overbroad.

The Ohio judicial personal solicitation ban is similar to the Kentucky ban invalidated in *Carey*. Like Kentucky's rule, the Oho Judicial Conduct Rule 4.4(A) previously prohibited a judicial candidate from any direct solicitation of campaign contributions. Rule 4.4, as amended, now permits candidates to directly solicit contributions when speaking before groups of twenty or more. Candidates may also sign fund raising letters from their campaign committee that go to large numbers of persons. Candidates may only accept contributions through a campaign committee. All judicial candidates must comply with the Ohio Code of Judicial Conduct when engaging in campaigns for elections to office. Consequently, these rules all apply to Plaintiffs Judge Corrigan, Judge Allen, and Martha Good.

Defendants claim that the Ohio Supreme Court's revised Rule 4.4 tracks the Sixth Circuit's opinion in *Carey* because the revised rule allows candidates to solicit funds during large gatherings and personally sign mass mailing campaign letters requesting donations. While it is

true that *Carey* suggested that those two restrictions posed little risk of coercion or opportunity for quid pro quo between the candidate and donor, those examples did not exhaust the range of constitutional applications improperly barred by the Kentucky rule. The Court did not hold that a hypothetical ban on direct, one-on-one fundraising was constitutionally permissible.[23] "[W]e do not decide today whether a State could enact a narrowly tailored solicitation clause—say, one focused on one-on-one solicitations or solicitations from individuals with cases pending before the court—only that this clause does not do so narrowly." *Id.* at 206.

Similarly, in Ohio, shaking hands and asking for support, one-on-one, from voters during door to door canvassing, at festivals, parades, picnics and public events or asking family, friends, colleagues, former classmates, and neighbors for support present additional, common campaign activities that are improperly banned under the Ohio rule. In Carey, the Court did not say that the prohibition on personal appeals for money was narrowly tailored to satisfy the state's interest in preventing corruption. If anything, the Court implied that in order for a solicitation ban to be narrowly tailored to address the state's interests in preventing *actual* corruption, it should to apply to litigants who had cases pending in court.

This Court stated, in denying the Motion for TRO and Preliminary Injunction that two areas of state interest might be legitimate limitations on a candidates' right to ask for a campaign contribution: "face-to-face solicitations, particularly by sitting judges, and solicitations of individuals with cases pending in front of the court." Order Doc. 49 p. 15. The Court also noted that *Carey* suggests that certain types of one-on-one solicitations are more likely to present the risk of undue pressure than others. *Id*. The Court denied the preliminary relief finding that since *Carey* did not rule all in-person one-on-one solicitation bans were unconstitutional and since the

---

[23] "But even if we grant the Commonwealth's premise—that in-person solicitations always lead to more immediate information about donations or rejections—that suggests only that the solicitation clause *may* be constitutional in some settings." *Carey* at 206.

Ohio ban was more narrow than Kentucky's ban, *Carey* did not compel a finding that the Ohio ban was unconstitutional.

Admittedly, Ohio's amended ban is not as broad as Kentucky's; nor is it as narrow as this Court and *Carey* suggested would be constitutional: banning all face-to-face contributions by sitting judges and solicitations of individuals with cases pending in front of the sitting judge. Perhaps, if Ohio had narrowed its ban to these two situations, which only involves judicial candidates who are incumbent judges and does not affect lay candidates, Ohio could defend its ban. But that is not the case. Ohio bans one-on-one solicitations in a much broader context, including solicitation bans by non-judges and by judges in circumstances that do not affect Ohio's interest in an "impartial judiciary" or an interest in "preserving the appearance and reality of a non-corrupt judiciary." Order Doc. 49 p. 15.

For these reasons, as a matter of law, Ohio's ban on personal solicitation is unconstitutional and should be permanently enjoined.

### A. Ohio's Interests in an Impartial Judiciary and an Appearance and Reality of Non-Corrupt Judiciary are Not Narrowly Tailored to Advance a Compelling State Interest.

Defendants articulate a number of interests (Rule 4.4 comment 1) that can be summarized as the District Court did, as having an interest in an impartial judiciary and preserving a non-corrupt judiciary. Defendants explain these interests as follows: turning down a fundraising request may be unnerving to litigations and their attorneys (p. 6); litigants who learn their judge solicited donations from opposing party or counsel could believe judge was impartial (p. 7); public confidence undermined by a judge who repays campaign contributors (p. 7); and litigants may feel they are not getting due process when a candidate privately communicates with them over money (p. 8). None of these interests can be compelling when Ohio requires judicial candidates

11

to know who was solicited (candidate must ensure committee solicitations are legal), Ohio requires candidates to know who contributed how much money (candidate must review campaign finance reports and comply with campaign laws), and Ohio permits a candidate to directly communicate with a future litigant in writing or in person to a group of 20 or more.

No judicial candidate is permitted to personally solicit an immediate family member, yet a broad list of immediate family members are permitted to make unlimited financial contributions to the candidate. Thus, the State cannot argue it has any interest in banning one-on-one solicitations of family members.

No judicial candidate is permitted to personally solicit close friends, relatives or lawyers, yet they may accept things of value from friends, relatives and other persons, including lawyers whose appear before them or have an interest in a pending or impending matter. Rule 3.13 (A)(2). Ohio's interest in minimizing corruption and impropriety is served by the requirement in Rule 3.13 (A) (2) that the judge who receives such things of value disqualify himself. Thus, Ohio has no additional interest in banning one-on-one solicitations of friends or lawyers who may appear before the judge when disqualification rules would serve the State's interest more fully. In addition, the State's *ex parte* prohibitions more narrowly serve the State's interest than a broad ban on all in person solicitations. Rule 2.9's prohibition on a judge talking *ex parte* to a party or attorney who is appearing in a case advances the State's interest more narrowly without the need to ban in person solicitations of persons who are not litigants or attorneys before the judge.

Rule 4.4 on its face, and as applied to Plaintiff candidates, prohibits writing thank you notes to donors and it prohibits thanking a donor for their "continued support." Defendants do not dispute the Rule bans such communication; instead, they submit Mr. Dove's affidavit that

12

interprets the rule in a way that allows thank you notes to be written. Def. Ex. 1 ¶ 9. However, this interpretation of the rule is not in the judicial seminar materials, is not in a comment to the Rules, nor is it in a written decision of the Ohio Supreme Court. The ban on thank you notes is not a compelling state interest, which the Defendants tacitly admit when they took the position such communications are not prohibited.

Rule 4.4 on its face, and as applied to Plaintiff candidates, prohibits a candidate from telling an unsolicited donor how to donate, handing a donor a contribution envelope, and giving the donor their website address. Defendants' submission of Mr. Dove's affidavit that interprets the rule to allow these activities does not cure the broad reach of the restrictions, but it does undermine any compelling state interest in prohibiting these in person solicitations.

Even the amended rule, allowing in person solicitations in a group, does not advance the Defendant's interest. Plaintiff Good testified that she has held three fundraisers during her campaign. Each was attended by fewer than twenty people. Under the amended Rule 4.4, Good is not allowed to ask for contributions from anyone attending her fundraisers, even though they are ostensibly there for the purpose of raising money. Banning her from asking 19 people for contributions but allowing her to ask 20 cannot advance an interest in an impartial or non-corrupt judiciary.

For these reasons, as a matter of law, Ohio's interest in banning personal solicitations is not narrowly tailored to meet the state's interest and is therefore unconstitutional and should be permanently enjoined.

**B. Ohio's Ban on In Person Solicitation is Not Narrowly Tailored.**

Ohio has implemented a number of rules that require judges and judicial candidates to uphold and promote the independence, integrity, and impartiality of the judiciary, and avoid impropriety

13

and the appearance of impropriety. (Code of Judicial Conduct Canon 1; see pages 4-6 *supra*). Given the entire framework of the Code of Judicial Conduct, banning all in person solicitations by judicial candidates is not narrowly tailored to advance a compelling state interest, especially when the other cannons and rules are more narrowly written to protect the state's interests.

The solicitation ban is vague given the evidence that the candidates believed the ban prohibited certain conduct that Defendants denied was prohibited: thank you notes, thank you notes that thanked donors for their continued support, distributing contribution envelopes, telling unsolicited donors how to donate, and providing the campaign website address (wherein contributions can be made) on campaign materials. Defendants argue the ban is not vague because a candidate is "always free to respond to a prospective donor's unsolicited inquiry" (p. 10) yet the Defendants do not say this in the Code, the comments, the judicial seminar, or in any Court decisions. Furthermore, Defendants contradict this position when they criticize a plaintiff for  responding to unsolicited donors.

> Indeed, Judge Allen candidly discussed occasions where individuals approached her in a public park and tried to hand over a cash donation. Tr. 48 (Doc. 45). Unbeknownst to her, those individuals easily could have been litigants, attorneys, or third parties with an interest in cases before her court. By preluding such personal contact, …..

Motion, Doc. 58, p. 8-9. Defendants attempt to clarify the rule by posing hypothetical questions and answering them (See Reply Memorandum (Doc. 72 p. 7)). These questions and answers dos not help to reduce the vagueness of the rule. In fact, Defendants, by straightforwardly answering questions in a legal memorandum, but not in the rule, comments, or court decision, emphasize the need to clarify the application of the rule in these various situations. Thus, it far from clear how far the solicitation ban reaches.

At the same time that Ohio's Rule 4.4 prohibits solicitations that have little risk of creating an impartial or corrupt judiciary, Ohio's Rule does nothing to protect the state's interests because

14

it permits campaign committees to solicit donations in person and does not bar judicial candidates from learning how individuals respond to solicitations.  Order Doc. 49 p. 16.  In fact, Ohio requires judicial candidates to enforce campaign finance laws and ensure reports of donors are accurate and legal.  Any interest Defendants have in avoiding the appearance of coercion is undone by Ohio's requirement that candidates know who does not donate to their campaigns, who does donate and how much.

For these reasons, Rule 4.4 is not narrowly tailored to advance a compelling state interest. Therefore, it unconstitutionally restricts Plaintiff's First Amendment Rights and should be permanently enjoined.

### C.  Defendants Restrictions are Overbroad

Defendants argue that the Plaintiffs' challenge to Rule 4.4 must fail because the Plaintiffs cannot show that it is facially overbroad. Traditionally a piece of legislation will only be declared facially unconstitutional where "there truly are 'no' or at least few 'circumstances' in 'which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  However, where the allegation is that the enforcement of the legislation may "deter people from engaging in constitutionally protected speech," the law should be facially invalidated if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Carey v. Wolnitzek*, 2010 WL 2771866 (6th Cir. 2010) *citing Washington State Grange v. Washington State Republican Party*, 522 U.S. 442, 449 (2008).  Because Plaintiffs have successfully shown that the solicitation ban will apply in a number of circumstances to deprive many differently situated individuals of their constitutionally protected right to speech, the provisions are unconstitutional on their face.

Judicial candidates are required to attend a seminar explaining the legal and ethical rules they must follow during judicial elections. The evidence showed that the rule, the comments, and the seminar materials (Def. Ex. 3) – when applied to common campaign activity – prevent constitutionally protected solicitation from taking place in a substantial number of situations that the judges face during their campaigns:

- When people approach Plaintiff Allen and ask if they can give money to her campaign, she is prohibited from accepting the donation because of the anti-solicitation rule. The rule also prevents her from giving the donor a remittance envelope with the address of the campaign committee. Plaintiff Allen can only tell the donor the address of the treasurer of her campaign committee, which would be easily forgotten.

- Plaintiff Corrigan testified that he may not tell people how to make contributions. He also testified that he cannot send thank you notes to donors that ask for the donor's continued support because they could be interpreted as another appeal for money.

- Plaintiff Corrigan attends ward meetings, church festivals, and parades, conducts door to door canvassing, and attends other functions at which he seeks to approach potential voters, shake hands, discuss his qualifications, ask for their support as campaign volunteers, and ask for their financial support. He meets hundreds of people in this fashion. Rule 4.4 prevents him from asking any of these potential donors for financial support.

- Plaintiff Corrigan stated that he is prohibited from handing out a flyer that contains his campaign website because the website asks visitors to make a campaign contribution. He would like to place the website address on all of his materials.

- Plaintiff Good testified that she would like to solicit and receive donations from her family members. She cannot ask her children or her mother to donate to her campaign. (Plaintiffs Corrigan and Allen also want to solicit and receive donations from friends and family.)

- Plaintiff Allen said she is very concerned when someone approaches her unsolicited and offers a campaign contribution. She is concerned that in such instances it could be a setup for an ethics complaint. Allen fears that any response to an unsolicited offer of money could expose her to an ethics investigation and eventual suspension, removal or public reprimand.

- Plaintiff Good testified she would want to handout contribution envelopes to people attempting to donate money but believes to do so would be an ethics violation. Defendants submitted the affidavit of Richard Dove (Def. Ex. 1) which actually supports Prof. Good's interpretation of the rule. Mr. Dove testified he has told seminar participants, in answer to a private question, asked after the conclusion of the seminar, that envelopes may be handed to a potential donor. However, no such permission is given in the seminar materials (Def. Ex. 3) or in writing, or by the Supreme Court. As Prof. Good testified, unless it is in writing, she would not do it for fear of an ethics charge being filed.

These facts demonstrate that the Plaintiffs' speech is chilled by the anti-solicitation rules and that there are hundreds of situations – clearly a substantial number – where the code prevents candidates from engaging in constitutionally protected conduct. A rule that has a laudable purpose but sweeps many constitutionally protected applications into a ban is overbroad. That has been the fate of many solicitation bans in other states. *Wersal v. Sexton*, No. 09-1578 (8th Cir. July 29, 2010) (Minnesota rule facially unconstitutional to that prohibited direct soliciting even though judicial candidates could appear before groups of 20 or more donors and sign fundraising letters); *Weaver v. Bonner*, 309 F. 3d 1312, 1322-23 (11th Cir. 2002) (Georgia ban on

17

personal solicitation by judicial candidates violates First Amendment); **but see contra** re Wisconsin rule, *Siefert v. Alexander*, 608 F.3d 974, 989 (7th Cir. 2010).

I. **CONCLUSION**

For these reasons Plaintiffs' motion for summary judgment should be granted because the undisputed evidence supports this Court finding that Rule 4.4(A) of the Ohio Supreme Court Code of Judicial Conduct is unconstitutionally overbroad and is not narrowly tailored to advance a compelling state interest. Thus this Court should permanently enjoin Rule 4.4(A)

Respectfully submitted,

/s/ Jennifer L. Branch
Alphonse A. Gerhardstein (0032053)
Trial Attorney for Plaintiffs
Jennifer L. Branch (0038893)
Attorney for Plaintiffs
GERHARDSTEIN & BRANCH Co. LPA
432 Walnut Street #400
Cincinnati, Ohio 45202
 (513) 621-9100
agerhardstein@gbfirm.com
jbranch@gbfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2012, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/s/ Jennifer L. Branch
Attorney for Plaintiffs