**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OHIO COUNCIL 8 AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al.,** | : | |
| **Plaintiffs,** | : | **Case No. 1:10-cv-00504-SJD** |
| **v.** | : | **Chief Judge Susan J. Dlott** |
| **SECRETARY OF STATE JENNIFER BRUNNER, et al.,** | : | |
| **Defendants.** | : | |

---

**DEFENDANTS SUPREME COURT OF OHIO, OHIO DISCIPLINARY COUNSEL, AND BOARD OF COMMISSIONERS' OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. 83)**

---

On the eve of 2010 election, plaintiffs claimed that Ohio's ban on one-to-one solicitation was facially invalid under the First Amendment. They invoked the Sixth Circuit's decision in *Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010), and sought a preliminary injunction.

The Court denied this request: Because Ohio's solicitation rule "is plainly more narrowly drawn than the outright solicitation ban struck down in *Carey*," it held that plaintiffs "[could] not . . . establish[] a likelihood of success on the merits of their claim that Ohio's ban on one-on-one solicitations is facially unconstitutional." Order at 16-17 (Doc. 49).

That was two years ago. In the intervening period, plaintiffs did not notice a deposition, serve an interrogatory, or unearth new precedent. They instead recycled their

previous argument. Marshaling the same evidence and case law, plaintiffs again assert that Ohio's ban on one-to-one solicitation is facially unconstitutional and urge the entry of a permanent injunction.

If this effort was insufficient to garner a preliminary injunction in 2010, it certainly cannot merit a permanent injunction now. The Court should deny plaintiffs' cross-motion.

**COUNTERSTATEMENT**

Defendants provided a concise statement of undisputed facts in their summary judgment motion, which they will not repeat here. Defendants do, however, object to three assertions in plaintiffs' statement of facts.

First, plaintiffs offer a list of activities allegedly prohibited by the Code of Judicial Conduct.[1] They say that judicial candidates may not send thank-you notes to donors, respond to questions from donors, distribute literature listing their campaign website, or provide contribution envelopes to donors. Plaintiffs then reference preliminary injunction testimony where Judge Allen, Judge Corrigan, and Ms. Good speculated that the Code banned such activities. *See* Cross Mot. at 2-3 (Doc. 83).

Despite having every opportunity for discovery, plaintiffs never substantiated these assertions with actual evidence. They do not discuss the Code's language. Nor could they: The language does not itself ban thank-you notes, campaign literature with website addresses, contribution envelopes, or candidate responses to unsolicited inquiries. Plaintiffs also fail to buttress their assertions with illustrative citations to disciplinary proceedings. Nor could they: No judicial candidate has faced disciplinary sanctions for these benign activities.

[1] Plaintiffs correctly note that the Code prohibits candidates "from personally soliciting family and friends" or "accepting unsolicited campaign contributions." Cross Mot. at 2-3 (Doc. 83).

Second, plaintiffs claim confusion on whether a judicial candidate may send thank-you notes to donors: "[I]n recent years Judge Allen testified she has been told that such a thank you note is an indirect solicit[ation]" under the Code. Cross Mot. at 4 (Doc. 83). But Judge Allen's concerns implicated *the prior version of the Code*, which did not articulate the boundary between a permissible thank-you letter and an impermissible solicitation letter.

The current version of the Code now permits written solicitations from candidates to donors. *See* Ohio Jud. Code R. 4.4(A)(1) ("A *judicial candidate* may sign letters soliciting campaign *contributions* if the letters are for distribution by the *judicial candidate's* campaign committee."). Plaintiffs have acknowledged that this revision allayed their concerns:

> Q: So you feel if you sign a campaign letter, a letter your campaign sent out, that would be good enough?
>
> A: I think that pretty much achieves the objective of being able to personally request it in a written form.

Tr. at 196 (Doc. 46) (Martha Good). Because the Code now allows all thank-you notes (even those that solicit additional support from the donor), this objection should be put to rest.

Third, plaintiffs say that Ohio's interests in judicial impartiality, independence, and due process "are served elsewhere in the Code of Judicial Conduct." Cross Mot. at 4 (Doc. 83). Again, they do not cite any evidence or testimony to support their contention.

Plaintiffs simply recite other portions of the Code. The vast majority of their citations, however, regulate sitting judges. They do not apply to Ms. Good or any other challenger seeking judicial office. Plaintiffs also fail to explain how the other Code provisions—for instance, limiting contributions to $575 and prohibiting judicial candidates from pledging certain rulings—deter improper, coercive, or unethical solicitation activities.

## ARGUMENT

### A. Case law authorizes Ohio's ban on one-to-one solicitation in judicial campaigns.

As before, plaintiffs invoke *Carey* and other decisions striking down outright solicitation bans. But Ohio does not maintain an outright ban. It prohibits only one-to-one solicitation, and allows fundraising activities that present little risk of coercion or the appearance of a quid pro quo. Such a tailored rule passes muster, both in the Sixth Circuit and elsewhere.

#### 1. Ohio's solicitation clause tracks the Sixth Circuit's decision in *Carey*.

In *Carey*, the Sixth Circuit invalidated a Kentucky canon that prohibited all personal solicitation ("A judge or a candidate for judicial office shall not solicit campaign funds") due to "considerable overbreadth." 614 F.3d at 206. The court expressed concern that "the canon prohibit[ed] . . . speeches to large groups and signed mass mailings." *Id*. at 205. "Such indirect methods of solicitation," the Sixth Circuit explained, "present little or no risk of undue pressure or the appearance of a quid pro quo." *Id*.

Ohio's solicitation rule "is plainly more narrowly drawn than the outright solicitation ban struck down in *Carey*." Order at 16 (Doc. 49). As this Court observed, Ohio's rule "permits precisely the types of solicitation the *Carey* Court said presented little risk of undue pressure or the appearance of a quid pro quo: speeches to large groups and signed mass mailings." *Id*. For that reason alone, plaintiffs cannot prevail on "their claim that Ohio's ban on one-on-one solicitations is facially unconstitutional under *Carey*." *Id*. at 17.

To be sure, the Sixth Circuit left open the question "whether a State could enact a narrowly tailored solicitation clause—say, one focused on one-on-one solicitations." *Carey*, 614 F.3d at 206. Plaintiffs seize on that point in their pleadings. *See* Cross Mot. at 10 (Doc. 83).

Therein lies the problem. From the outset of this case, plaintiffs have typecast this litigation as "simply an effort to apply the ruling addressing the Kentucky Code of Judicial Conduct in *Carey*" to Ohio's solicitation clause. Cross Mot. at 8 (Doc. 83). But the *Carey* decision "stopped short of holding that a rule banning all in-person one-on-one solicitation would be unconstitutionally overbroad." Order at 16 (Doc. 49).

To invalidate Ohio's one-to-one solicitation ban, plaintiffs must offer something else (other than *Carey*) to meet their burden. They failed to do so at the preliminary injunction stage, and their cross-motion offers nothing new.

**2. Out-of-circuit authority lends further support to Ohio's solicitation rule.**

Plaintiffs also suggest that federal courts have invalidated "many solicitation bans in other states." Cross Mot. at 17 (Doc. 83). Their survey is wildly inaccurate.

Federal courts have upheld solicitation canons in Arizona, Indiana, Pennsylvania, and Wisconsin against facial attack. *See Bauer v. Sheppard*, 620 F.3d 704, 709-10 (7th Cir. 2010); *Siefert v. Alexander*, 608 F.3d 974, 988-90 (7th Cir. 2010); *Stretton v. Disciplinary Bd.*, 944 F.2d 137, 144-46 (3d Cir. 1991); *Wolfson v. Brammer*, 822 F. Supp. 2d 925, 930-31 (D. Ariz. 2011). In each instance, the solicitation canon was more restrictive than the Ohio clause here.

The Eighth Circuit recently joined this camp. A judicial candidate challenged Minnesota's solicitation clause under the First Amendment. The court (as plaintiffs observe) initially held the Minnesota clause "unconstitutional . . . even though judicial candidates could appear before groups of 20 or more donors and sign fundraising letters." Cross Mot. at 17 (Doc. 17) (citing *Wersal v. Sexton*, 613 F.3d 821 (8th Cir. 2010)). But the Eighth Circuit, sitting en banc, vacated that decision and issued a new ruling: Minnesota's "solicitation clause is narrowly tailored to serve Minnesota's interests in preserving impartiality and

preserving the appearance of impartiality." *Wersal v. Sexton*, 674 F.3d 1010, 1031 (8th Cir. 2012) (en banc), *see also id*. at 1033 (Loken, J., concurring) ("[T]he personal solicitation clause survives a proper level of strict scrutiny.").

In fact, only one other circuit has entertained a facial attack on a solicitation clause. The Eleventh Circuit, in *Weaver v. Bonner*, 309 F.3d 1312, 1315 (11th Cir. 2002), reviewed a Georgia rule providing that judicial candidates "shall not themselves solicit campaign funds." That broad restriction mirrored Kentucky's outright solicitation ban in *Carey*: It "completely chilled [candidates] from speaking to potential contributors" and, therefore, "[wa]s not narrowly tailored to serve Georgia's compelling interest in judicial impartiality." *Id*. at 1322.

At bottom, facial challenges have prevailed in two cases (*Carey* and *Weaver*) involving an outright solicitation ban. But no court has invalidated a judicial canon like Ohio's—narrowly tailored to face-to-face and one-on-one solicitation. Two years ago, this Court declined plaintiffs' invitation to be the first. Because neither the facts nor the law have changed, the Court should again reject their offer.

**B. Plaintiffs have not substantiated their facial attack on Ohio's solicitation clause.**

Notwithstanding their dearth of case law, plaintiffs persist that Ohio's solicitation ban is facially invalid. Not so.

**1. Ohio's clause satisfies strict scrutiny.**

Defendants' summary judgment motion identified four compelling interests: (1) protecting donors from undue coercion; (2) preserving judicial impartiality and the appearance of impartiality; (3) furthering the public's trust in the judiciary; and (4) safeguarding litigants' due process rights. They then explained how Ohio's one-to-one solicitation ban advanced those interests in a narrowly tailored fashion. *See* Mot. for Sum. J. at 5-13 (Doc. 58).

Plaintiffs attempt three responses. First, they argue that Ohio's clause is ineffective because, regardless of how a solicitation occurs, "candidates [still] know who contributed how much money." Cross Mot. at 12 (Doc. 83). This ignores the clause's chief purpose. One-to-one solicitation carries a unique risk of coercion and undue pressure: "In-person solicitation by a lawyer . . . [i]s a practice rife with possibilities for overreaching, invasion of privacy, the exercise of undue influence, and outright fraud." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 641 (1985); *accord Bauer v. Shepard*, 634 F. Supp. 2d 912, 955 (N.D. Ind. 2009) (admission by judicial candidate "that personal solicitations have additional leverage"). Ohio's solicitation clause narrowly targets that evil without disrupting other forms of fundraising.

Second, plaintiffs observe that Ohio authorizes written solicitations and large-group solicitations. *See* Cross Mot. at 12 (Doc. 83). But "speeches to large groups and signed mass mailings . . . present little or no risk of undue pressure or the appearance of a quid pro quo." *Carey*, 614 F.3d at 205. One-to-one solicitation is a different story. "[P]ersonal solicitation creates a situation where potential contributors must choose to either contribute to the candidate, or decline to contribute, with a resulting risk of retribution." *Wersal*, 674 F.3d at 1029. What is more, "[a] contribution given directly to a judge, in response to a judge's personal solicitation of that contribution, carries with it greater potential for a quid pro quo." *Siefert*, 608 F.3d at 989. Because one-to-one solicitation poses inimitable risks for would-be donors, litigants, and the public trust, Ohio can prohibit it.

Third, plaintiffs insist that "disqualification rules would serve the State's interest more fully." Cross Mot. at 12 (Doc. 83). They are wrong. By the time a recusal request is filed, the damage is already done. The unwilling donor will have already faced the unethical or

coercive solicitation. The litigant will have already lost faith in the court's impartiality. And the public's confidence in the judiciary will have already taken a hit. Because it takes only a few publicized transgressions to taint public opinion, "unbridled solicitation and receipt of campaign contributions . . . could erode the public's trust in the integrity of its judges." Order at 18 (Doc. 49). Simply put, "recusal serves as an after-the-fact remedy that is insufficient to cure the damage to the appearance of impartiality fashioned by personal solicitation, which is by and large complete at the time of the 'ask.'" *Wersal*, 674 F.3d at 1031.

Because Ohio's clause narrowly targets the threats posed by one-to-one solicitation, and because no less restrictive tools are available, it easily passes muster under *Carey*.

**2. Ohio's clause does not forbid candidate responses, website advertisements, contribution envelopes, and thank-you letters.**

Plaintiffs next try to inflate the solicitation clause's scope, and then attack it as constitutionally overbroad. *See* Cross Mot. at 16-17 (Doc. 83). The Court should reject that effort. The clause's language is clear, narrow, and easy to administer.[2]

First, the solicitation clause proscribes only "solicitations." Ohio Jud. Code 4.4. A candidate "solicits" a donation when he "approach[es] with a request or plea." Merriam Webster Dictionary (2011). Answering a question, by definition, is not a "solicitation." To that end, plaintiffs may respond to inquiries from prospective donors with campaign materials, event information, or a contribution envelope.

Second, the clause proscribes only "personal" solicitation. *See* Ohio Jud. Code 4.4(A) ("A *judicial candidate* shall not personally solicit campaign *contributions*."). A candidate

[2] Although the cross-motion does not advance a discrete claim of vagueness, plaintiffs do criticize "[t]he solicitation ban [a]s vague." Cross Mot. at 14 (Doc. 83). Such gripes ring hollow. Ohio's solicitation clause tracks the language in a host of state and federal bribery, corruption, and fraud statutes. *See* Reply at 7 (Doc. 72) (listing examples). And no court has characterized those statutes as vague.

may refer a supporter to her campaign committee, her volunteer, or her committee website. The volunteer or the website can then solicit donations from the supporter because, in that situation, there is no "personal" solicitation of money by the candidate.

Third, the clause does not prevent plaintiffs from listing their campaign committee information and website address on flyers. In fact, Ohio law *requires* candidates to include such information on their communications. *See* Ohio Rev. Code § 3517.105.

Fourth, the clause expressly authorizes written communication between candidates and supporters. *See* Ohio Jud. Code 4.4(A) ("A *judicial candidate* may sign letters soliciting campaign *contributions* if the letters are for distribution by the *judicial candidate's* campaign committee."). Candidates are thus free to mail letters—campaign appeals, fundraising invitations, thank-you notes requesting continued support, and the like—to supporters. The one caveat: They must route such correspondence through their campaign committee, as opposed to their courthouse or home address.

In short, plaintiffs have nothing to worry about. Their activities—responding to a supporter's question, tendering a contribution envelope, distributing a campaign flyer with a website address, and sending a thank-you note—fall well beyond the solicitation clause's provisions. What is more, plaintiffs fail to cite a single instance where the Ohio Supreme Court and the Board of Commissioners disciplined a candidate for these activities.

Concern is warranted, plaintiffs say, because the Code of Judicial Conduct does not explicitly authorize these activities in its rules or commentary. That criticism is misplaced. Although the Code employs simple and direct language, it cannot discuss every specific situation that judicial candidates might encounter. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952) ("[M]ost statutes must deal with untold and unforeseen variations in

factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions.").

The candidates should take the Code's language at face value: The solicitation clause is a narrow effort to regulate the evils associated with one-to-one solicitation, not a far-reaching attempt to proscribe the benign conduct trotted out in plaintiffs' cross-motion.

**3. Ohio's ban on one-to-one solicitation is not overbroad.**

Plaintiffs' remaining objections to Ohio's solicitation clause fall flat.

First, the candidates complain that they cannot personally collect money from supporters. But the *physical receipt* of money does not implicate any expressive activity. As a result, this restriction does not offend the candidates' First Amendment rights.

Second, the candidates complain that they cannot personally solicit their families. But they offered no evidence that the solicitation clause hindered their ability to raise donations from these individuals. In fact, the record shows that plaintiffs' family members were aware of their candidacies, and that their relatives contributed to the campaigns. *See* Order at 17 (Doc. 49).

Third, the candidates complain that they cannot personally solicit friends. But one-to-one solicitation presents hazards regardless of whether the would-be donor is a stranger or an acquaintance. As the Seventh Circuit correctly observed, "[t]he potential for actual or perceived mutual back scratching, or for retaliation against attorneys who decline to donate . . . is the same whether or not the judge knows the potential donor's first name." *Bauer*, 620 F.3d at 710. Ohio can therefore proscribe these encounters.

Despite insisting that Ohio's one-to-one ban operates unconstitutionally in "hundreds of situations," plaintiffs' cross-motion articulates none. As such, plaintiffs are not entitled to the "exceptional remedy" of facial invalidation. *Carey*, 614 F.3d at 201 (facial invalidation

appropriate "if a substantial number of [the law's] applications are unconstitutional") (internal quotations and citation omitted).

**C. Plaintiffs have not met the standard for a permanent injunction.**

One final matter: Plaintiffs urge this Court to enjoin permanently Ohio's solicitation clause, yet at no point do they cite (much less discuss) the legal standard for obtaining a permanent injunction. That silence speaks volumes.

The standard for a permanent injunction is "essentially the same" as the standard for a preliminary injunction. *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)). The two key distinctions: Plaintiffs must show (1) "actual success" on the merits rather than a likelihood of success; and (2) "continuing irreparable injury" rather than a likelihood of irreparable injury. *Id* (citations omitted).

Plaintiffs' cross-motion comes nowhere close to satisfying this standard.

*Actual Success on the Merits*: Two years ago, this Court concluded that plaintiffs had not "established a likelihood of success on the merits of their claim that Ohio's ban on one-on-one solicitations is facially unconstitutional under *Carey*." Order at 17 (Doc. 49). The cross-motion does not identify any new evidence or case law. It simply repackages plaintiffs' preliminary injunction motion. If these arguments were insufficient to establish a "likelihood of success" on the merits in 2010, they certainly cannot establish "actual success" today.

*Continuing Irreparable Injury*: Two years ago, this Court found a "lack of evidence that judicial candidates are less able to run an effective campaign vis a vis their judicial opponents because of the ban on one-to-one solicitation." Order at 17 (Doc. 49). As such, the Court "[could] not conclude that Plaintiffs have demonstrated a likelihood of irreparable harm." *Id*. The cross-motion does not identify any new evidence. It simply repeats

plaintiffs' preliminary-injunction-stage assertions of harm. Because this evidence was insufficient to show irreparable injury two years ago, it is insufficient today.

*Public Interest*: Plaintiffs filed this permanent injunction request a few short months before the 2012 election, seeking facial invalidation of Ohio's solicitation clause. If the Court grants the request, it will leave Ohio with *no regulations* on judicial solicitation for the upcoming campaign. The Ohio Supreme Court will not have adequate time to draft, publish, and promulgate new rules before November.

Do not worry, plaintiffs say, because other Code provisions prevent judges from soliciting campaign contributions while on the bench. And if a candidate accepts a bribe, the State can prosecute him. But these tools provide little protection against unethical conduct. If the solicitation clause is invalidated in its entirety, candidates could solicit contributions from lawyers with pending cases, accost potential donors in the courthouse parking lot or at a bar association function, and call every newly admitted attorney to ask for contributions. While Judge Allen, Judge Corrigan, and Ms. Good "unequivocally stated" that they would never do such things, *see* Order at 17 (Doc. 49), nothing would preclude them—or any other candidate—from undertaking this conduct.

The Court faced the same landscape in 2010, when plaintiffs sought a preliminary injunction a few short months before the general election. In denying their request, the Court expressed fear that "[a]bolishing all restrictions on personal solicitation could undermine public confidence that the judiciary is fair, impartial, and independent." Order at 17-18 (Doc. 49). In particular, "unbridled solicitation and receipt of campaign contributions . . . could erode the public's trust in the integrity of its judges." *Id*. at 18. Those concerns are still present today.

Because all the factors tip decidedly against the plaintiffs, the Court should deny their request for a permanent injunction.

* * *

Plaintiffs may harbor legitimate questions about the Code of Judicial Conduct, but Ohio provides a ready forum for resolution. If they are confused about the solicitation clause's scope, they can ask the Board of Commissioners for formal guidance. If plaintiffs object to the solicitation clause's application to certain situations, they can lodge complaints with the Board. Defendants will address their inquiries promptly. *See* Ohio Gov. Bar R. V § 2(C); Ohio Bd. of Comm'rs and Grievances Reg. 20. The members of the Board and the justices of the Ohio Supreme Court are just as committed to First Amendment values as plaintiffs, and they will seriously consider proposals to clarify or narrow the Code's language.

What is more, this Court has the last word. If plaintiffs are displeased with the Ohio Supreme Court's responses, they can return to federal court, press an as-applied constitutional challenge, and seek a declaration that the solicitation clause cannot be applied in particular circumstances.

But this litigation—which seeks to tear down the solicitation clause *in its entirety*—is the wrong approach. Neither the record, nor the law supports plaintiffs' facial attack. This Court correctly rejected their claims on the last go-around, and it should do so again today.

## CONCLUSION

The Court should deny the cross-motion for summary judgment (Doc. 83).

Respectfully submitted,

MICHAEL DEWINE
Ohio Attorney General

/s/ Richard N. Coglianese

Richard N. Coglianese* (0066830)
*Trial Counsel*
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 466-2872
(614) 728-7592 fax
richard.coglianese@ohioattorneygeneral.gov

Counsel for Defendants Supreme Court of Ohio, Ohio Disciplinary Counsel, and Board of Commissioners of Grievances and Discipline

## CERTIFICATE OF SERVICE

This will certify that Defendants' Opposition to Plaintiffs' Cross-Motion for Summary Judgment was filed electronically on July 11, 2012. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

//s/ Richard N. Coglianese

Richard N. Coglianese