IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| OHIO COUNCIL 8 AMERICAN | : | |
| FEDERATION OF STATE, COUNTY, | : | Case No. 1:10-cv-504 |
| AND MUNICIPAL EMPLOYEES, AFL-CIO, | : | |
| *et al.*, | : | Chief Judge Susan J. Dlott |
| Plaintiffs, | : | |
| | : | ORDER GRANTING IN PART AND |
| v. | : | DENYING IN PART DEFENDANTS' |
| | : | MOTION FOR SUMMARY |
| JENNIFER BRUNNER, *et al.*, | : | JUDGMENT AND GRANTING IN |
| | : | PART AND DENYING IN PART |
| Defendants. | : | PLAINTIFFS' MOTION FOR |
| | : | SUMMARY JUDGMENT |
| | : | |

Plaintiffs claim that the Ohio Code of Judicial Conduct Rule that prohibits judicial

candidates from personally soliciting campaign contributions except in writing or when speaking

to groups of twenty or more individuals violates their rights under the First Amendment.

Defendants[1] move for summary judgment claiming that this restriction on a judicial candidate's

right to solicit campaign funds is narrowly tailored to advance a compelling state interest.  Doc.

58.  Plaintiffs filed a cross-motion for summary judgment on the claim.  Doc. 83.  For the

following reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion

and GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion.  The rule is constitutional

on its face, but because it does not advance the State's compelling interests when applied to

---

[1] The instant motion for summary judgment was filed by Defendants Supreme Court of
Ohio, Ohio Disciplinary Counsel, and Board of Commissioners on Grievances and Discipline.
Because the motion does not address all Plaintiffs' claims, resolving it does not dispose of the
case.

1

prohibit judicial candidates from personally soliciting campaign contributions from their immediate family members, the Court will enjoin application of the Rule in that narrow context.

## I. BACKGROUND

Judges are elected in Ohio. Plaintiffs — a statewide labor organization, three Ohio judicial candidates, and the Ohio Democratic Party — challenge two aspects of Ohio's judicial election system in this case. First, they challenge the Ohio statute that requires judicial candidates to run in partisan primaries but then requires that the judicial candidates' names appear without a party designation on a nonpartisan section of the general election ballot. Second, they challenge the section of the Ohio Code of Judicial Conduct ("Judicial Code") that prohibits judicial candidates from one-on-one, personal solicitation of campaign contributions and personal receipt of campaign contributions. The present motions, and hence this Order, concern only this second issue — Plaintiffs' challenge to Rule 4.4(A) of the Judicial Code.[2]

The Judicial Code consists of four canons, numbered rules under each canon, and comments that follow and explain each rule. Judicial Code, Scope ¶ 1. A judge may be disciplined only for violating a rule; the canons are intended to provide guidance in interpreting the rules. *Id*. ¶ 2. Canon 4 pertains to a judicial candidate's campaign activity and provides, "[a] judge or judicial candidate shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary." Rule 4.4, "Campaign Solicitations and Contributions," includes numerous subparagraphs that set forth specific rules a

---

[2] Plaintiffs' constitutional challenge to the Ohio statute governing the placement of judicial candidates on a nonpartisan section of the general election ballot is the subject of a separate motion for summary judgment brought by the Ohio Attorney General. The Court will consider that motion in a separate order.

judicial candidate and his/her campaign committee must follow.  The subparagraph Plaintiffs

challenge in this case, Rule 4.4(A), provides as follows:

> A *judicial candidate* shall not personally solicit campaign
> *contributions*, except as expressly authorized in this division, and
> shall not personally receive campaign *contributions*.  A *judicial
> candidate* may establish a campaign committee to manage and
> conduct a campaign for the candidate, subject to the provisions of
> this Code.  The *judicial candidate* is responsible for ensuring that
> his or her campaign committee complies with applicable
> provisions of this Code and other applicable *law*.  A *judicial
> candidate* may solicit campaign contributions in the following
> manner:
>
> (1) A judicial candidate may make a general request for campaign
> *contributions* when speaking to an audience of twenty or more
> individuals;
>
> (2) A *judicial candidate* may sign letters soliciting campaign
> *contributions* if the letters are for distribution by the *judicial
> candidate*'s campaign committee and the letters direct
> *contributions* to be sent to the campaign committee and not to the
> *judicial candidate*.

*Id.* (emphasis in original).

Judicial Code Rule 4.4(A) was not as above when Plaintiffs initiated this action on July

28, 2010.  At that time, the solicitation rule completely banned a judicial candidate from

personally soliciting campaign contributions: "A judicial candidate shall not personally solicit or

receive campaign contributions."  Former Ohio Jud. Cond. Rule 4.4(A).  Plaintiffs filed the

lawsuit because on July 13, 2010, the Sixth Circuit Court of Appeals struck down a similar

solicitation ban in Kentucky.  *Carey v. Wolnitzek*, 614 F.3d 189, 204 (6th Cir. 2010).  Plaintiffs

asked this Court to apply the reasoning of *Carey* to Ohio's ban on personal solicitation and

enjoin enforcement of former Rule 4.4(A).

3

Before the Court held the hearing on Plaintiffs' motion for a preliminary injunction, the Ohio Supreme Court amended the solicitation rule, changing it from a total ban on personal solicitation to the more limited ban set forth above.[3]  As amended, the Rule now permits judicial candidates to request campaign contributions when speaking to an audience of twenty or more individuals and to sign letters soliciting campaign contributions if the letters are distributed by the candidate's campaign committee and direct contributions to be sent to the committee. However, in all other circumstances, judicial candidates "shall not personally solicit campaign contributions."  Judicial Code Rule 4.4(A).  The amendments took effect on August 12, 2010.

At the hearing on Plaintiffs' motion for a preliminary injunction on August 13, 2010, Plaintiffs' counsel argued that, even as revised, Rule 4.4(A)'s limitations on solicitation unconstitutionally restricted Plaintiffs' First Amendment rights.  Plaintiffs Common Pleas Judges Nadine Allen and Peter J. Corrigan and judicial candidate Martha Good testified at the hearing.[4] Judge Allen testified that she would like to personally solicit campaign contributions from family members and close friends who would not come before her in court, but that Rule 4.4(A) prohibits her from doing so.  Doc. 45 at 48.  Judge Allen said that she would never solicit lawyers because she would not "want it to look like justice is for sale."  *Id*. at 63.  Judge

---

[3]  The Supreme Court of Ohio has the constitutional responsibility to oversee the practice of law in the state.  Ohio Const. art. IV, § 5(b).  It has established three offices — the office of Disciplinary Counsel, Board of Commissioners on Grievances & Discipline, and the Clients' Security Fund — to exercise independent authority to assist the Court in meeting this responsibility.  Plaintiffs have named as Defendants in this case the Office of Disciplinary Counsel, which investigates allegations and initiates complaints concerning ethical misconduct of judges under the Code of Judicial Conduct; and the Board of Commissioners on Grievances and Discipline, which enforces discipline for ethical misconduct and serves as the ethics commission for the filing of financial disclosure statements required of Ohio judges, judicial candidates, and magistrates.

[4]  The transcript of the August 13, 2010 hearing is filed of record as Docs. 45 and 46.

Corrigan testified that he would like to shake people's hands and ask for their support but is prohibited by the Rule from doing so.  *Id*. at 82.  Judge Corrigan explained his preference for one-on-one solicitation of campaign contributions as opposed to solicitation to a large group, saying that personal interaction is important so that a voter can have "a connection with the candidate" and be able to "voice that support financially."  *Id*. at 83.  Because of the restriction on one-on-one solicitation, Judge Corrigan is hesitant to pass out literature that directs someone to a web site that solicits a contribution.  *Id*. at 85.

Following the hearing, this Court issued an order denying Plaintiffs' motion for a preliminary injunction.  The Court concluded that Plaintiffs had not established a likelihood of success on the merits of their claim that Ohio's ban on one-on-one solicitation was facially unconstitutional under *Carey* and had not demonstrated a likelihood of irreparable harm if the Court did not enjoin enforcement of Judicial Conduct Rule 4.4(A).  The Court further found that the balance of equities tipped in favor of maintaining the status quo.  Doc. 49.  A discovery period commenced, but the parties did not conduct any discovery.  Cross motions for summary judgment followed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *See Matsushita Elec.*

5

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-2 (1986).

The parties have filed cross-motions for summary judgment. Accordingly,

> [e]ach party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that she or the [other party] is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

*Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 732 (S.D. Ohio 2006).

## III. ANALYSIS

Strict scrutiny applies to this First Amendment challenge. *Carey*, 614 F.3d at 198-99 (discussing the Supreme Court's application of strict scrutiny to judicial canons in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) and other case law regarding content-based restrictions on speech). Accordingly, Rule 4.4(A) must satisfy two criteria to avoid running afoul of the First Amendment: it must "advance a 'compelling state interest,'" and it must be "narrowly tailored" to advance that interest. *Id.* at 200 (citation omitted).

In their Complaint, Plaintiffs challenge Judicial Code Rule 4.4(A) on its face and as applied to them. "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect . . . [but t]he distinction is both instructive and

necessary, for it goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 893 (2010).  A successful facial challenge to Rule 4.4(A) will render an as-applied analysis unnecessary, so the Court will begin by analyzing Plaintiffs' claim that the Rule is unconstitutional on its face.

### A. Facial Challenge

To succeed in a typical facial attack, a plaintiff must "establish 'that no set of circumstances exist under which [the challenged law] would be valid.'"  *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  However, courts "'rightly lighten this load in the context of free-speech challenges to the facial validity of a law.'"  *Carey*, 614 F.3d at 201 (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc)).  Free-speech challenges are entitled to this unique treatment because "First Amendment standards . . . 'must give the benefit of any doubt to protecting rather than stifling speech.'"  *Citizens United*, 130 S. Ct. at 891 (quoting *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469 (2007)).  Practically speaking, "enforcement of an overbroad law may deter[] people from engaging in constitutionally protected speech and may inhibit[] the free exchange of ideas."  *Carey*, 614 F.3d at 201 (internal quotations omitted).  Accordingly, in the First Amendment context, a law may be facially invalidated as overbroad "if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *Id.* (quoting *Stevens*, 130 S. Ct. at 1587).

As noted, when Plaintiffs filed their Complaint and asserted that Rule 4.4(A) was facially unconstitutional, the Rule prohibited a judicial candidate from personally soliciting campaign contributions in any manner.  *Carey* found that such an outright ban was facially unconstitutional

under the First Amendment.  Thus, there is no doubt that Ohio's former solicitation rule would have been found unconstitutional under the precedent of *Carey*.  However, Rule 4.4(A) as revised is no longer a total ban on a judicial candidate's personal solicitation of campaign contributions.  Accordingly, the Court must determine the effect of *Carey* on a solicitation ban that is narrower than the one that the Sixth Circuit considered in that case.

As revised, there are applications of Rule 4.4(A) that are legitimate.  Plaintiffs acknowledged as much at the preliminary injunction hearing.  At that hearing, Plaintiffs testified that there are situations in which they would never personally solicit or receive campaign contributions.  By way of example, Judge Allen testified that, although she believes judicial candidates should have a choice as to who they can solicit, she agreed that "judges should have personal restrictions imposed and nothing [that is, no solicitation] should be happening during court or in any official capacity.  I would not allow that.  I would not change that in any way with what I'm doing."  Doc. 45 at 44-45.  Explaining her position further, Judge Allen said she would never solicit from the bench.  "[T]he last thing I want to do is solicit lawyers . . . because I don't want it to look like justice is for sale."  *Id*. at 62-63.  Similarly, Judge Corrigan testified that "it would be completely improper to have a litigant come up and hand you a check during court or even after court or in the hallway of the courthouse or to staff.  I would never do that, and that, I think, would call into question that appearance [of independence, integrity, and impartiality]."  *Id*. at 87.  Because of this, Judge Corrigan would "never solicit any kind of a contribution in the court or let my staff do that."  *Id*. at 89.  Further, although Judge Allen testified that she believes a judicial candidate should be permitted to accept unsolicited contributions, she stated that she would "not want people dropping off money in my courtroom."

8

*Id*. at 48.  By these comments, Plaintiffs acknowledge that there are applications of Rule 4.4(A) that they believe are legitimate restrictions.

Because the Rule has a plainly legitimate sweep, the Court must decide whether "a substantial number of its applications are unconstitutional" in relation to this legitimate sweep. *Carey*, 614 F.3d at 201.  To reach this decision, the Court must examine the nature of Ohio's asserted interests to be advanced by the Rule.  If the interests are compelling, and the Rule is narrowly tailored to advance them, then Plaintiffs' facial challenge must fail.  *Id*. at 200.

### 1.  Ohio's Compelling State Interests

Ohio claims that its rule banning judicial candidates from one-one-one solicitation and receipt of campaign contributions advances four compelling interests: (1) protecting donors from undue coercion, (2) preserving judicial impartiality and the appearance of impartiality, (3) furthering the public's trust in the judiciary, and (4) safeguarding the litigants' due process rights.  The Court will begin by considering the State's interest in preserving the appearance and reality of judicial impartiality.  As will be explained below, these concepts also encompass the third and fourth interests asserted by the State: furthering the public's trust in the judiciary and safeguarding the due process rights of litigants.

Several courts have considered constitutional challenges to codes of judicial conduct that limit the speech of judges and judicial candidates, and in so doing they have concluded that the preservation of an impartial judiciary is a compelling interest.  In *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), for example, the Supreme Court found that judicial impartiality, when defined as a lack of bias against a *party* to a proceeding, is a compelling interest.  *See id.* at 776.  The Court observed that a judge's actual impartiality, specifically his or her application of

9

the law in the same way to all parties, is essential to due process.  *Id.* (citing cases in which judges had violated the due process rights of litigants because of their lack of impartiality).

The Sixth Circuit elaborated on the idea that judicial impartiality is critical to due process in *Carey*, in which it noted that fund-raising limitations often serve the compelling interests of an impartial judiciary and the preservation and appearance of a non-corrupt judiciary.  *Carey*, 614 F.3d at 204.  In particular, *Carey* noted that "[l]itigants have a due process right to a trial before a judge with no 'direct, personal, substantial pecuniary interest' in the outcome, . . . and the legitimacy of the judiciary rests on delivering on that promise and in furthering the public's trust in the integrity of its judges." *Id.* (internal citations omitted).[5]  Thus, it is established that actual

---

[5] The Sixth Circuit went on to note in *Carey* that preserving the compelling interests of an impartial and non-corrupt judiciary "grows more complicated" when a state elects its judges rather than appoints them.  *Id.* at 204.  The complexity arises from the fact that judicial elections "require money — often a lot of it," and that judicial candidates are often forced to focus fund-raising efforts on the segment of the population most likely to have an interest in judicial races: the bar.  *Id.*  "This leads to the unseemly situation in which judges preside over cases in which the parties are represented by counsel who have contributed in varying amounts to the judicial campaigns." *Id.* (quoting *Stretton v. Disciplinary Bd. of Supreme Court of Pa.*, 944 F.2d 137, 145 (3d Cir. 1991)).

Justice Sandra Day O'Connor has discussed at length the dilemma posed by electing "impartial" judges, noting that "the very practice of electing judges undermines this interest [in an actual and perceived impartial judiciary]."  *White*, 536 U.S. at 788 (O'Connor, J., concurring). Underlying her concerns was the following fact:

> Unless the pool of judicial candidates is limited to those wealthy enough to independently fund their campaigns, a limitation unrelated to judicial skill, the cost of campaigning requires judicial candidates to engage in fundraising.  Yet relying on campaign donations may leave judges feeling indebted to certain parties or interest groups. . . .  Even if judges were able to refrain from favoring donors, the mere possibility that judges' decisions may be motivated by the desire to repay campaign contributors is likely to undermine the public's confidence in the judiciary.

*Id.* at 789-90. Justice O'Connor concluded that "[i]f the State has a problem with judicial impartiality, it is largely one the State brought upon itself by continuing the practice of popularly electing judges."  *Id.* at 792.  It is the State's obligation, then, to develop rules that permit judges to run their campaigns effectively while protecting the due process rights of litigants and the

judicial impartiality serves a state's compelling interest of safeguarding a litigant's due process rights.

In considering a challenge to a one-on-one solicitation ban similar to the one at issue in this case, the Eighth Circuit recently elaborated on the distinction between actual and perceived judicial impartiality.  First, it had "little difficulty concluding that Minnesota's interest in preserving impartiality, defined as the lack of bias for or against a party to a proceeding, is compelling."  *Wersal v. Sexton*, 674 F.3d 1010, 1020 (8th Cir. 2012) (referring to *White* and citing *Siefert v. Alexander*, 608 F.3d 974, 981 (7th Cir. 2010) and *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)).  Then, the *Wersal* court went further and explained that *actual impartiality* and *the appearance of impartiality* are distinct concepts for two reasons:

> First, actual impartiality concerns the mental state of a particular judge, whereas the appearance of impartiality arises from the public's perception of that judge.  Second, the appearance of impartiality often stems from the collective awareness of the public, and thus [a state's] interest in maintaining the appearance of impartiality is in this sense broader and qualitatively different than its interest in fostering actual impartiality. . . .  Instead of aiming to protect the due process rights of actual parties to a case, maintaining the appearance of impartiality is systemic in nature, as it is essential to protect the judiciary's reputation for fairness in the eyes of all citizens.  This reputational interest is not a fanciful one; rather, public confidence in the judiciary is integral to preserving our justice system.

*Id*. at 1022.  Parsing the concept of judicial impartiality into these distinct components, actual impartiality and perceived impartiality, revealed that the state of Minnesota was in fact asserting two separate interests: preservation of a litigant's due process rights, and protection of the judiciary's reputation for fairness.  The Eighth Circuit concluded that *both* these concepts —

---

public's trust in the judiciary.

11

actual impartiality and the appearance of impartiality — were compelling state interests.  *Id*. at 1023.

In this case, Ohio contends that its rule banning judicial candidates from one-on-one solicitation and receipt of campaign contributions advances the compelling interests of preserving judicial impartiality and the appearance of impartiality, furthering the public's trust in the judiciary, and safeguarding the litigants' due process rights.  As the foregoing analysis demonstrates, these latter two interests are subsumed in the first: actual impartiality implicates due process concerns of litigants, and perceived impartiality implicates the public's trust in the judiciary.  Pursuant to *White*, *Carey*, and *Wersal*, this Court concludes that Ohio's interests in preserving both the appearance and reality of impartial judges are compelling.

Ohio's remaining asserted compelling interest is to protect donors from coercion.  Ohio claims that concerns over potential coercion are heightened in judicial elections because attorneys and litigants who are personally solicited by a judicial candidate know they might come before that candidate in a courtroom, and they might fear that declining the request will trigger disfavor.  As noted by the Seventh Circuit, "A direct solicitation closely links the quid — avoiding the judge's future disfavor — to the quo — the contribution."  *Siefert*, 608 F.3d at 989. The Supreme Court has acknowledged that in-person solicitation differs from a public appeal because the intimate nature of in-person solicitation "exert[s] pressure and often demands an immediate response" from the person being solicited.  *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457 (1978); *accord Bauer v. Shepard*, 634 F. Supp. 2d 912, 955 (N.D. Ind. 2009) (in which a judicial candidate admitted that personal solicitations have additional leverage).  Most critical to this case is the fact that the Sixth Circuit in *Carey* expressly discussed the issue of coercion

12

and noted that limits on in-person solicitations could be legitimate because, unlike written

solicitations, in-person solicitations could have a coercive effect.  *Carey*, 614 F.3d at 205

(comparing *Ohralik*, 436 U.S. at 465-66 (State may regulate lawyers' *in-person* for profit

solicitation of clients because of "intrusive[ness]" of "persuasion under circumstances conducive

to uninformed acquiescence") with *In re Primus*, 436 U.S. 412, 435-36 (1978) (regulation of

lawyer's *written* solicitation did not "afford any significant opportunity for overreaching or

coercion") and *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 475 (1988) ("Targeted, *direct-mail*

solicitation is distinguishable from the in-person solicitation" because there is no "badgering

advocate breathing down [a potential client's neck," asking for "an immediate yes-or-no

answer.")).  The Sixth Circuit's discussion of Supreme Court precedent on this issue leads this

Court to conclude that Ohio's interest in protecting potential donors from coercion by judicial

candidates, a situation brought about by in-person solicitation, is a compelling interest.

Having concluded that Ohio's interests in preserving the appearance and reality of an

impartial judiciary and protecting donors from coercion are compelling interests, the matter

comes down to whether Judicial Code Rule 4.4(A) is narrowly tailored to those interests.

### 2.  Narrow Tailoring

*Carey* erected the guideposts for this Court's analysis of the narrow tailoring prong of the

test.  The court observed in that case that "[p]rohibiting candidates from asking for money

suppresses speech in the most conspicuous of ways."  *Id.*  Indeed, the court expressed concern

over any limitation on a candidate's right to ask for campaign contributions, stating, "it is

tempting to say that *any* limitation on a candidate's right to ask for a campaign contribution is

one limitation too many."  *Id.* at 204-05.  However, the court went on to say that at least two

areas covered by Kentucky's solicitation clause might be legitimate limitations: face-to-face solicitation of campaign contributions, particularly by sitting judges, and solicitation of individuals with cases pending in front of the court.  *Id*. at 205.  The court did not decide whether those two narrow restrictions survived strict scrutiny because the Kentucky canon went well beyond them.  *Id*.  However, later in the opinion, the court circled back to those two scenarios and suggested that a state "*could* enact a narrowly tailored solicitation clause — say, one focused on one-on-one solicitations or solicitations from individuals with cases pending before the court."  *Id*. at 206.

The Ohio Supreme Court tracked the language of *Carey* when it revised Rule 4.4(A) and permitted the types of solicitation the court said presented little risk of undue pressure or the appearance of a quid pro quo: speeches to large groups and signed mass mailings.  *See Carey*, 614 F.3d at 205.  Specifically, Ohio Rule 4.4(A) now permits a judicial candidate to make a request for campaign contributions when speaking to an audience of twenty or more individuals. A judicial candidate also may sign letters soliciting campaign contributions if the letters are for distribution by the judicial candidate's campaign committee and the letters direct contributions to be sent to the campaign committee and not to the judicial candidate.  It is thus more narrowly drawn than the outright solicitation ban struck down in *Carey*.  However, a judicial candidate still "shall not personally solicit campaign contributions" one-on-one, and under no circumstances may a judicial candidate "personally receive campaign contributions."  Rule 4.4(A).

Plaintiffs contend that the above solicitation restrictions fail the narrow tailoring test because they are vague and difficult to understand.  For example, one judge testified at the

preliminary injunction hearing that he did not know if Rule 4.4 prohibited him from shaking festival-goers' hands and asking for their support.  Another judge testified that she did not know whether handing a person a campaign contribution envelope was a violation.

This Court disagrees with Plaintiffs' position that Rule 4.4(A) is vague.  Courts that have considered similar bans on the "personal solicitation" of campaign contributions have had no difficulty understanding the meaning of that phrase.  To "solicit" is "[t]o seek to obtain by persuasion, entreaty, or formal application" or "[t]o petition persistently; importune."  The American Heritage Dictionary 1654 (4th ed. 2000).  Accordingly, judicial candidates are prohibited from personally seeking to obtain or petitioning for campaign contributions except when speaking to an audience of twenty or more individuals or by signing letters for distribution by a campaign committee as described above.

Under Rule 4.4(A), judicial candidates remain free to respond to a donor's unsolicited inquiries regarding how to contribute because, by definition, a response to an unsolicited offer to contribute funds is not a solicitation.  The candidate may respond to such inquiries by, for example, handing out a flier with the campaign committee's address or providing the donor with a pre-addressed contribution envelope addressed to the candidate's campaign committee.  The candidate also may distribute fliers that list the campaign's website, and the website may include instructions on how to contribute to the campaign.  These acts do not implicate the solicitation clause because they do not constitute *personal solicitation* of campaign contributions *by the candidate*.  The Court thus concludes that Judicial Code Rule 4.4(A) is not vague and will analyze whether the Rule as plainly written is narrowly tailored to Ohio's compelling interests.

### i.  Actual Impartiality

Bearing in mind that actual impartiality is a component of a litigant's due process rights, the Court must analyze whether Ohio's ban on in-person solicitation and receipt of campaign donations is narrowly tailored to advance this particular compelling interest.  Plaintiffs contend that the ban on personal solicitation and receipt of donations does not advance the interest of actual impartiality because other provisions of Ohio law require judicial candidates to know who was solicited (Rule 4.4 requires candidates to ensure their campaign committee complies with other provisions of the Judicial Code, including those which forbid the committee to solicit certain categories of individuals) and who contributed how much money (candidates must review campaign finance reports, which are public documents maintained by the boards of elections).  According to Plaintiffs, because the candidates know who their committee solicited and who donated, forbidding them from personally soliciting themselves does nothing to advance the objective of actual impartiality.

This issue played an important part in the Sixth Circuit's decision to strike down Kentucky's solicitation ban in *Carey*.  Kentucky's solicitation clause barred any solicitation but did "not bar the candidate from learning how individuals responded to the committee's solicitations."  614 F.3d at 205.  The *Carey* court observed:

> If the purported risk addressed by the clause is that the judge or candidate will treat donors and non-donors differently, it is knowing who contributed and who balked that makes the difference, not who asked for the contribution.  If Kentucky fears that judges will allow campaign donations to affect their rulings, it must believe that "[s]uccessful candidates will feel beholden to the people who helped them get elected regardless of who did the soliciting of support."

*Id.* (quoting *Weaver v. Bonner*, 309 F.3d 1312, 1323 (11th Cir. 2002)).

16

This language suggests that the Sixth Circuit would reject a solicitation ban as being insufficiently tailored if a state did not also block a candidate from discovering who contributed to the campaign.  However, the court went on to consider Kentucky's argument that when a candidate asks for a donation in person, she immediately will find out whether the donor gives and how much.  *Id.* at 206.  The court concluded that even if it were true "that in-person solicitations always lead to more immediate information about donations or rejections—that suggested only that the solicitation clause *may be constitutional in some settings*."  *Id.* (emphasis added).  In so finding, the court seemed to suggest that a ban on in-person solicitation might advance the interest of actual impartiality, notwithstanding the fact that a candidate could later learn the identity of donors who responded to a campaign committee's solicitation, because the candidate's knowledge of who contributed would be attenuated from the solicitation.  Presumably, this attenuation would preserve actual impartiality until some later time.

Although *Carey* leaves open the door to a finding that an in-person solicitation ban might be constitutional, this Court finds that such a ban does not significantly advance the cause of actual impartiality when it is not accompanied by a prohibition on a candidate's knowledge of who has contributed.  The fact that a judicial candidate in Ohio can, and arguably must, ultimately find out who was solicited and who then donated money to his campaign cuts deeply against a finding that Judicial Code Rule 4.4 is narrowly tailored to advance the compelling interest in actual impartiality.[6]  The inquiry into the Rule's constitutionality does not end here,

---

[6] Lending to the Eighth Circuit's decision to uphold Minnesota's judicial code banning in-person solicitation was the fact that the code prevented a candidate from knowing the identity of contributors.  *Wersal*, 674 F.3d at 1030-31.  The fact that candidates could later learn the identity of donors through the internet did not alter the court's conclusion: just because a candidate could violate the judicial code by researching the names of donors did not mean the code was unconstitutional.  *Id.* at 1031.

however, because whether the Rule advances the interests of the appearance of impartiality and preventing coercion involve different considerations.

### ii.  Appearance of Impartiality

Attenuating the candidate's solicitation from knowledge about the donor's contribution insufficiently addresses the potential for actual impartiality when the candidate can later ascertain who has contributed and how much.  However, courts have observed that separating the "ask" from the "receipt" is important to preserving the separate interest of avoiding the appearance of judicial impartiality.

The *Wersal* court concluded that a ban on in-person solicitation was effective in addressing the appearance of impartiality.  674 F.3d at 1030.  In so concluding, the Eighth Circuit looked to the opinions of several other courts that had considered the question, including the Supreme Court in *White*, the Seventh Circuit in *Siefert*, and the Third Circuit in *Stretton v. Disciplinary Board of Supreme Court of Pennsylvania*, 944 F.2d 137, 145 (3d Cir. 1991).  In her concurring opinion in *White*, Justice O'Connor observed that "[e]ven if judges were able to refrain from favoring donors, the mere possibility that judges' decisions may be motivated by the desire to repay campaign contributors is likely to undermine the public's confidence in the judiciary."  536 U.S. at 790.  Similarly, the Seventh Circuit upheld Wisconsin's personal solicitation ban after finding that "the appearance of and potential for impropriety is significantly greater when judges directly solicit contributions than when they raise money by other means." *Siefert*, 608 F.3d at 989-990.[7]  And the Third Circuit upheld Pennsylvania's Code of Judicial

---

[7]  Unlike the approach taken by this Court, the Seventh Circuit did not employ a strict scrutiny standard in reaching its conclusion but applied the standard applicable to campaign finance regulations set forth in *Buckley v. Valeo*, 424 U.S. 1 (1976).  *Siefert*, 608 F.3d at 988. Under *Buckley*, restrictions on spending by candidates and parties is reviewed with strict

Conduct provision that banned judicial candidates from in-person solicitation after concluding that in-person solicitation lends itself to the appearance of coercion or expectation of impermissible favoritism.  *Stretton*, 944 F.2d at 146.  Quoting the Supreme Court of Oregon's opinion sustaining the constitutionality of a similar judicial canon, the *Stretton* court noted that "[i]nsulating the judge from such direct solicitation eliminates the appearance (at least) of impropriety and, to that extent, preserves the judiciary's reputation for integrity."  *Id*. at 145 (quoting *In re Fadeley*, 802 P.2d 31, 40 (Or. 1990)).

Plaintiffs suggest that Ohio's disqualification rules are sufficient to address the state's interest in preserving the appearance of impartiality.  Specifically, Judicial Code Rule 2.11(A) provides that a judge "shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."  Defendants dispute that this rule is sufficient to address its interest in preserving the appearance of judicial impartiality.  They argue that by the time a motion to disqualify is filed, the damage is already done because the public's confidence in the judiciary will already have "taken a hit."

The Court agrees with Defendants that disqualification alone is insufficient to preserve the State's interest in preserving the appearance of impartiality.  First, Rule 2.11 places the onus on the judge to decide whether his or her impartiality might reasonably questioned.  This self-check mechanism may advance the cause of actual impartiality, but it does little to bolster the

---

scrutiny, while restrictions on contributions are reviewed under less rigorous "closely drawn" scrutiny.  *Id*.  Because the direct solicitation ban did not restrict the amount or manner in which a judicial candidate could spend money on his or her campaign, the *Siefert* court applied "closely drawn" scrutiny to the direct solicitation ban.  *Id*.

This Court is applying strict scrutiny in this case because the Sixth Circuit applied strict scrutiny to the First Amendment challenge to the Kentucky Code of Judicial Conduct in *Carey*. *See id*. at 198 ("Strict scrutiny applies to all three aspects of this First Amendment challenge.").

appearance of impartiality because the skeptical citizen might question a judge's assessment of his or her own impartiality.  Further, a judge's refusal to disqualify himself or herself when actual bias does exist results not only in a violation of litigants' due process rights but also significantly erodes public confidence in the judiciary.  *See*, *e.g.*, *Wersal*, 674 F.3d at 1031 (discussing *Caperton.*, 556 U.S. 868 (2009), in which the Supreme Court held that the Due Process Clause required a judge to recuse himself in an appeal involving a corporation whose chief executive officer spent over $2.5 million in support of the judge during his election, "whether or not actual bias exist[ed] or [could] be proved.")

Second, relying on disqualification as a means to preserve the appearance of judicial impartiality would be unworkable from a practical standpoint.  As the *Siefert* and *Wersal* courts observed, because "judicial campaigns are often largely funded by lawyers, many of whom will appear before the candidate who wins, . . . [i]t would be unworkable for judges to recuse themselves in every case that involved a lawyer whom they had previously solicited for a contribution."  *Wersal*, 674 F.3d at 1031 (quoting *Siefert*, 608 F.3d at 990).  This Court is persuaded by the reasoning of the Seventh and Eighth Circuits and likewise concludes that rules compelling disqualification or recusal are insufficient to protect the State's interest in protecting the appearance of judicial impartiality.

By banning judicial candidates from engaging in one-on-one solicitation, Rule 4.4(A) hones in on the aspect of fund raising that is most apt to raise eyebrows and hackles.  By permitting candidates to personally solicit campaign contributions from large groups of individuals and to indirectly solicit campaign contributions in writing and through their campaign committees, the Rule allows them adequate opportunity to fund their campaigns.

20

Accordingly, this Court finds that the Rule is narrowly tailored to target the aspects of fund raising that cause the greatest threat to the appearance of judicial impartiality.

### iii. Preventing Coercion

The Court must now consider whether the ban on one-on-one solicitation and receipt of campaign contributions is narrowly tailored to the State's legitimate interest in preventing coercion. As discussed above, the Supreme Court has acknowledged that in-person solicitation differs from a public or written appeal because the intimate nature of in-person solicitation "exert[s] pressure and often demands an immediate response" from the person being solicited. *Ohralik*, 436 U.S. at 457. The Sixth Circuit recognized this in *Carey* and noted that limits on in-person solicitations could be legitimate because, unlike written solicitations, in-person solicitations could have a coercive effect. *Carey*, 614 F.3d at 205 (discussing *Ohralik*, 436 U.S. at 465-66). Specifically, *Carey* observed that unlike personal solicitation, "speeches to large groups and signed mass mailings . . . present little or no risk of undue pressure." *Id*. Indeed, "personal solicitation creates a situation where potential contributors must choose to either contribute to the candidate, or decline to contribute, with a resulting risk of retribution." *Wersal*, 674 F.3d at 1029.

Because the intimacy of in-person solicitation is what creates the potential for coercion, it is difficult to imagine an anti-coercion remedy that stops short of prohibiting intimate, in-person solicitation. This Court cannot conceive of any less restrictive means. Thus, having concluded that a personal solicitation from a judicial candidate is uniquely coercive because the person solicited — whether an attorney or a member of the public who might ultimately have a case

pending before that judge — will feel pressure to donate or face retribution, a ban on one-on-one solicitation is the least restrictive means of advancing Ohio's interest in preventing coercion.

The State has determined that the coercive effect of in-person solicitation is sufficiently diminished when the group solicited is comprised of twenty or more individuals. As the Eighth Circuit recognized when upholding Minnesota's judicial conduct rule that permitted a judicial candidate to solicit groups of twenty or more individuals, "'[t]he setting of the group size at a minimum of twenty persons is not talismanic, but the inclusion of a number does not, by itself, establish an arbitrary political speech restriction.'" *Wersal*, 674 F.3d at 1029 n. 11 (quoting *Wersal v. Sexton*, 607 F. Supp. 2d 1012, 1026 (D. Minn. 2009)). The Court concludes that Rule 4.4(A), which prohibits one-on-one personal solicitation but allows solicitation to larger groups, is narrowly tailored to advance Ohio's interest in preventing coercion by judicial candidates.

The Court now turns back to the overarching question: whether Plaintiffs have demonstrated that Rule 4.4(A) is facially invalid. Recalling that in the First Amendment context a law may be facially invalidated "if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep,'" the Court concludes that Plaintiffs have not demonstrated the Rule's invalidity and the State has demonstrated the Rule's validity. *Carey*, 614 F.3d at 201 (quoting *Stevens*, 130 S. Ct. at 1587). To the extent there are unconstitutional applications of the Rule, which will be discussed below, they are not substantial in relation to the Rule's plainly legitimate sweep. The Rule is not facially unconstitutional and the Court will not permanently enjoin it in its entirety.

### B. As Applied Challenge[8]

---

[8] Justice Scalia explained in *Citizens United* that the distinction between facial constitutional challenges and as-applied constitutional challenges goes to the breadth of the

Plaintiffs also claim that Rule 4.4(A) is unconstitutional as applied to them in specific situations. These specific situations are personally soliciting contributions from family and close friends who have nothing to do with the court; personally soliciting individuals at public gatherings such as fairs and parades and by going door-to-door; and personally accepting unsolicited donations.[9] The Court must determine whether these applications of Rule 4.4(A) in fact violate Plaintiffs' free speech rights under the First Amendment.

As discussed in the section of this Order upholding the facial validity of the ban on personal solicitation of campaign contributions, the vast majority of the potential applications of Rule 4.4(A) do not offend the First Amendment rights of judicial candidates. The State's interests in preserving the appearance and reality of an impartial judiciary and preventing coercion apply equally to Plaintiffs in this case as to all judicial candidates. Thus, that the Plaintiffs are prohibited from personally soliciting individuals at public gatherings and from asking for campaign contributions by going door-to-door is conduct prohibited by the legitimate scope of Rule 4.4(A). Importantly, there is nothing prohibiting judicial candidates in Ohio from talking to individuals at public gatherings or from talking to individuals by going door-to-door.

---

remedy employed by the court. 558 U.S. at 893. Specifically, "[i]f a statute [or rule, as in this case] is unconstitutional as applied, the State may continue to enforce the statute [or rule] in different circumstances where it is not unconstitutional." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997).

[9] Plaintiffs also expressed a desire to personally sign thank you letters to donors that request that donor's continued support. However, following its amendment, Rule 4.4(A) now permits candidates to sign letters soliciting campaign contributions so long as the letters are for distribution by the candidate's campaign committee and direct contributions to be sent to the committee and not to the candidate. Judicial candidate Martha Good testified that she felt that this change "achieves the objective of being able to personally request [contributions] in a written form." Doc. 46 at 81. Similarly, Judge Allen testified that the Rule's revision now gives her the choice to sign letters, which she believes will have a positive effect on donors. Doc. 45 at 46.

What the Rule forbids is the personal solicitation *of campaign contributions*.  The candidates also are free to hand out literature to individuals even if that literature includes the website for the candidate's campaign committee.  Again, what the Rule prohibits is a candidate's own, personal solicitation of campaign contributions.  This Court has found that such a prohibition is narrowly tailored to the State's compelling interests.

However, there is one area in which the application of Rule 4.4(A) seems to have diminished value: the prohibition against a judicial candidate asking an immediate family member to contribute to his or her campaign.  The Rule has diminished value in this application because the State's asserted interests — preserving the appearance and reality of judicial impartiality and preventing coercion — already are protected by other judicial conduct rules pertaining to a judge's family members.  In particular, a judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned.  Judicial Code Rule 2.11.  This requires a judge to disqualify himself or herself in any proceeding involving an immediate family member.  That a judge must recuse himself or herself from matters involving immediate family members is recognized in other Rules, such as the one that permits a judge to accept gifts, loans, and other things of value from close friends and family members because their appearance or interest in a proceeding before the judge would in any event require the judge's disqualification.  Judicial Code Rule 3.13(A)(2).

Plaintiffs argue that, for the purposes of campaign solicitation, a judicial candidate's close friends should be treated in the same way as the candidate's immediate family members.  This argument is compelling to the extent that the Judicial Code recognizes that a judge might have to disqualify himself or herself in a case in which a friend is involved.  However, the

24

Judicial Code treats a judge's family members differently from a judge's friends in many

respects.  For example, Rule 3.7 permits a judge to solicit contributions for educational or

charitable organizations, but only from members of the judge's family or other judges.  Most

significantly, the State has established different campaign contribution rules for a judicial

candidate's family members: campaign contribution limits do not apply to members of the

candidate's immediate family.[10]  Judicial Code Rule 4.4(J)(1).  In keeping with the distinction

already established by the State in this regard, the Court finds that the State's interests vis-à-vis a

candidate's immediate family members are different from its interests vis-à-vis members of the

public, including a judicial candidate's friends.  Accordingly, the Court disagrees with Plaintiffs

that a judicial candidate's close friends should be treated in the same way as his or her family

members with regard to campaign contribution solicitation.

Plaintiffs testified that they would ask family members to contribute to their campaigns

were it not for the Judicial Code's prohibition on doing so.  In other words, the Rule has chilled

Plaintiffs' speech in this particular context.  Because prohibiting Plaintiffs' speech in this narrow

context does nothing to advance the State's interests in preserving the appearance and reality of

judicial impartiality or preventing coercion, the prohibition is impermissible.  The chilling effect

on Plaintiffs' speech caused by the ban on soliciting family members is sufficient to demonstrate

an injury under the First Amendment.

The Court recognizes that, in its Order Denying Plaintiffs' Motion for Temporary

Restraining Order and Preliminary Injunction, it concluded that the Plaintiffs had failed to

---

[10]  The Rules define "immediate family" as "a spouse or domestic partner or any of the
following who are related by blood or marriage to the judicial candidate: Parent; Child; Brother
or sister; Grandparent; Grandchild; Uncle or aunt; Nephew or niece; Great-grandparent; First
cousin."  Judicial Code Rule 4.6 (subparagraph numerals omitted).

demonstrate a likelihood of irreparable harm because they had presented no evidence that the Rule prohibited them from running effective campaigns.  Specifically, Plaintiff Good testified that, despite not being able to ask her family members for money, they were aware of her candidacy and donated to her campaigns in the past.  Nevertheless, the Court recognizes that the suppression of speech itself in this narrow application constitutes an injury that is redressable by a favorable judgment from this Court.  Accordingly, the Court finds that Rule 4.4(A), as applied to Plaintiff candidates when seeking to personally solicit campaign contributions from immediate family members, violates Plaintiffs' First Amendment rights.  The Court permanently enjoins Defendants from enforcing Judicial Code Rule 4.4(A) in this application.[11]

One final observation: Plaintiffs assert that Rule 4.4(A)'s prohibition on their personal *receipt* of campaign contributions violates their rights under the First Amendment.  However, the Court is unaware of any legal support for a conclusion that candidates have a First Amendment right to personally receive campaign contributions.  While the Supreme Court has stated that limits placed on public campaign *expenditure* and *contributions* "implicate fundamental First Amendment interests," it made no such finding with respect to *receipt* of campaign contributions.  *Buckley v. Valeo*, 424 U.S. 1, 23 (1976).  This Court will not simply suppose that the Supreme Court would hold that the political expression inherent in spending and contributing money is likewise present in a candidate's personal receipt of money.  *See*, *e.g.*, *Dean v. Blumenthal*, 577 F.3d 60, 70 (2d Cir. 2009) (discussing *Randall v. Sorrell*, 548 U.S. 230 (2006), in which the Supreme Court held that Vermont's campaign finance statute's expenditure limits

---

[11]  As a point of reference, the Minnesota Judicial Canons upheld in *Wersal v. Sexton*, 674 F.3d 1010 (8th Cir. 2012), generally prohibit judicial candidates from personally soliciting campaign contributions but permit a judicial candidate to personally solicit campaign contributions from members of the judge's family.  *Id*. at 1017.

for candidates and contribution limits for individuals, organizations, and political parties violated First Amendment free speech protections but did not recognize a First Amendment right to receive campaign contributions).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the Defendants' Motion for Summary Judgment (Doc. 58) and **GRANTS IN PART and DENIES IN PART** Plaintiff's Cross Motion for Summary Judgment (Doc. 83).  The Court hereby enjoins application of Ohio Code of Judicial Conduct Rule 4.4(A) only insofar as it prohibits judicial candidates' personal solicitation of immediate family members.

IT IS SO ORDERED.

                                                 \_\_\_\_s/Susan J. Dlott_____
                                                 Chief Judge Susan J. Dlott
                                                 United States District Court